UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY JOEL JUDY, an individual,

    Plaintiff,

vs.

PINELLAS COUNTY, ROBERT S. LASALA (in his official capacity of County Administrator for Pinellas County), THE CITY OF ST. PETERSBURG, FLORIDA, and TISH ELSTON (in her official capacity as City Administrator for St. Petersburg)

    Defendants.

CASE NO.: 8:12-cv-01386-JDW-TGW

**INJUNCTIVE RELIEF SOUGHT**

**FIRST AMENDED COMPLAINT**

Plaintiff, JEFFREY JOEL JUDY ("Mr. Judy" or "Plaintiff") through his undersigned counsel, hereby files this First Amended Complaint and sues PINELLAS COUNTY, ROBERT S. LASALA (in his official capacity of County Administrator for Pinellas County), THE CITY OF ST. PETERSBURG, FLORIDA, and TISH ELSTON (in her official capacity as City Administrator for St. Petersburg) (collectively, "Defendants") for injunctive relief, damages, attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("Americans with Disabilities Act" or "ADA") and pursuant to 29 U.S.C. § 794 *et seq.* (Rehabilitation Act) and states as follows:

I.    **PARTIES**

    1.    Plaintiff, Mr. Judy, is a resident of Lee County in the State of Florida.

1

2. Mr. Judy was severely injured in a motorcycle accident and is paralyzed from the waist down. Mr. Judy, a T8-T9 paraplegic, is also a double leg amputee and uses a wheelchair as his primary means of mobility.

3. Due to his disability, Plaintiff is substantially impaired in several major life activities such as walking and standing and requires a wheelchair for mobility.

4. Defendant, PINELLAS COUNTY ("PC"), is a Political Subdivision of the State of Florida. Upon information and belief, Pinellas County owns and administers programs and activities offered at Tropicana Field, generally located at 1 Tropicana Drive, St. Petersburg, Florida 33705 ("The Property"). PC is responsible for complying with the obligations of the ADA and Rehabilitation Act.

5. Defendant, ROBERT S. LASALA, is the County Administrator for the County of Pinellas, Florida. Upon information and belief, the PC Administration office is the chief entity for PC that is responsible for PC's ownership and administration of programs and activities at The Property. Upon information and belief, Mr. Lasala was in a position to accept or reject Rehabilitation Act obligations as part of the decision whether to receive federal funds. Mr. LaSala is sued in his official capacity.

6. Collectively, Defendants PINELLAS COUNTY and ROBERT S. LASALA are hereafter known as the "PC Defendants".

7. Defendant, THE CITY OF ST. PETERSBURG, FLORIDA ("CSP"), is a Municipal Corporation of the State of Florida. Upon information and belief, CSP has an ownership interest in The Property. As a party to a lease-back and management agreement with Pinellas County, CSP is responsible for operating, managing, maintaining, renovating (as

necessary), and promoting The Property. CSP is responsible for complying with the obligations of the ADA and Rehabilitation Act.

8. Defendant, TISH ELTON, is the City Administrator for the City of St. Petersburg Florida. Upon information and belief, the CSP City Administration office is the chief entity for CSP that is responsible for overseeing CSP's ownership interest in the Property and administering the programs and activities thereat. Upon information and belief, Ms. Elton was in a position to accept or reject Rehabilitation Act obligations as part of the decision whether to receive federal funds. Ms. Elton is sued in her official capacity.

9. Collectively, Defendants THE CITY OF ST. PETERSBURG, FLORIDA and TISH ELTON are hereafter known as the "CSP Defendants."

## II. JURISDICTION AND VENUE

10. This is an action for damages, declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 et seq., (see also 28 U.S.C. § 2201 and § 2202), and for Plaintiff's claims arising from 29 U.S.C. §794 et seq. (Rehabilitation Act). This Court is vested with original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

11. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and Rule 1.02, Local Rules of the United States District Court for the Middle District of Florida.

12. All events giving rise to this lawsuit occurred in the Middle District of Florida.

## III. FACTS

### A. Tropicana Field

13. Tropicana Field ("The Property") is a domed stadium in St. Petersburg, Florida, which (in addition to hosting other events), is best known as the home of Major League Baseball's Tampa Bay Rays.

3

14. Upon information and belief, the initial construction on the stadium was completed in 1990. In 1991, professional sports debuted at the stadium. Then called the Suncoast Dome, it initially served as the home stadium for the Arena Football League's Tampa Bay Storm.

15. In or about 1993, the stadium was renamed the Thunderdome. From approximately 1993-1995, the Thunderdome was the home stadium for the National Hockey League's Tampa Bay Lightning.

16. In 1995, a new Major League Baseball expansion franchise was awarded to Tampa Bay, which was scheduled to begin play in 1998. The stadium was renamed Tropicana Field in 1996 and became the home stadium to Major League Baseball's Tampa Bay Rays.

17. The park was closed to the public in 1996-1997 for major renovations in anticipation of the baseball franchise. On October 7, 1996, St. Petersburg Mayor David Fischer presided over the groundbreaking ceremony for what became a 15-month, $63 million renovation to the facility.

18. Upon information and belief, the park was re-opened to the public in February 1998 as the Rays' first Spring Training camp opened.

19. Upon information and belief, Tropicana Field underwent a further $25-million renovation prior to the 2006 baseball season. During the 2006 baseball season, another $10 million in improvement were added.

B. **Defendants are the Recipients of Federal Funds**

20. Defendants are both direct and indirect recipients of federal funding, now and during the time the alleged discrimination occurred in June 2012.

21. In 2012, the PC Defendants were and are a direct and indirect recipient of federal funds. Upon information and belief, for FY 2012, the PC Defendants received 450 direct payments of federal assistance, 29 federal grants, and 23 federal contracts, worth nearly $20 million.

22. Further, the PC Defendants indirectly received federal funds from the State of Florida. The PC Defendants have and are also a recipient of federal funding relating to parks and recreation.

23. In 2012, the CSP Defendants were and are a direct and indirect recipient of federal funds. Upon information and belief, for FY 2012, the CSP Defendants received 9 grants, 2 direct payments, and a contract providing federal funding, worth nearly $4 million.

24. Further, the CSP Defendants indirectly received federal funds from the State of Florida. The CSP Defendants have and are also a recipient of federal funding relating to parks and recreation.

25. Finally, Defendants received federal funding relating directly to Tropicana Field, the facility at issue in this case. For example, the Pinellas County Environmental Fund (of which PC is a member), which is funded in large part by the National Oceanic and Atmospheric Administration, received federal funds to educate Tropicana Field parkgoers about environmental restoration projects at the park and conservation practices.

26. In another example, PC's Metropolitan Planning Organization, which is funded in large part through grants from the Federal Highway Administration and U.S. Department of Administration, is constructing and/or renovating a recreational trail (the Historic Booker Creek Trail which provides access to Tropicana Field. The trial is part of the CSP City Trails Master Plan, which was adopted by the CSP City Council in 2003.

27. Defendants knowingly requested and accepted federal funds and cannot avoid the accompanying obligation to comply with federal civil rights laws.

C. **Plaintiff's Visit to The Property and Intent to Return**

28. For years, Mr. Judy has been a fan of the Tampa Bay Rays. Like many fans, Mr. Judy decided to attend a game, visiting The Property in June of 2012 to view a Rays game against the New York Mets. Mr. Judy plans to return to The Property in the near future (September 2012) to watch the Rays play.

29. Though Mr. Judy resides in Fort Myers, Florida (approximately 100 miles from The Property), this is well within the geographical fan base of the Tampa Bay Rays. In fact, the Tampa Bay Rays are the closest MLB team to Mr. Judy's residence.

30. During his last visit to The Property, Mr. Judy experienced serious difficulty accessing the programs and activities therein due to the architectural barriers discussed herein. For instance, Mr. Judy had difficulty parking his vehicle, traversing the route to the entrance, using the restrooms, purchasing food and beverages at concession counters, using the tables and maneuvering around the stadium.

31. Mr. Judy continues to desire to visit The Property to utilize the programs and activities there (to watch live baseball games), but fears that he will once again encounter serious difficulty due to the barriers to access which still exist at The Property.

32. Mr. Judy plans to and will visit The Property in the future as a patron who enjoys live baseball and also to determine if the barriers to access alleged herein have been modified for greater wheelchair access.

## IV. CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

33. Plaintiff realleges and reavers the preceding paragraphs as if they were expressly restated herein.

34. PC is a public entity, subject to the ADA, which owns and administers the programs and activities at Tropicana Field. The Property is home to events such as Tampa Bay Rays baseball games. Robert La. Sala is the PC County Administrator.

35. CSP is also a public entity, subject to the ADA, which administers programs and activities at Tropicana Field. Tish Elton is the CSP City Administrator.

36. 42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

37. Defendants have discriminated against Plaintiff, Mr. Judy, by denying him full access to the services, programs, and/or activities by failing to make The Property, Tropicana Field, readily accessible as required by 42 U.S.C. §12132 and its implementing regulations, 28 C.F.R. Part 35.101-35.190 *et. seq*.

38. The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by excluding and/or denying Plaintiff the full and equal benefits of their services, programs, and/or activities by failing to, *inter alia*, have accessible facilities for live viewing of events. Plaintiff has personally experienced numerous barriers to access on The Property, as discussed herein.

39. Mr. Judy has observed, encountered, and/or experienced numerous discriminatory barriers to access at Tropicana Field. These barriers include, but are not limited to, the following violations which Plaintiff personally encountered:

   a. Plaintiff had difficulty utilizing the parking designated for disabled use due to excessive slopes within the parking spaces and their access aisles;

   b. Plaintiff had difficulty utilizing the routes between the parking designated as accessible and the stadium entrance due to excessive slopes and cross slopes;

   c. Plaintiff had difficulty utilizing the service and concession counters throughout the stadium due to excessive height for wheelchair use;

   d. Plaintiff had difficulty utilizing the tables and seating provided at the food and beverage concession areas due to a lack of designated accessible tables or seating;

   e. Plaintiff had difficulty utilizing the restrooms due to inaccessible stalls which were too small for wheelchair use and lacked proper turning radius;

   f. Plaintiff had difficulty utilizing the restrooms due to exposed pipes under sinks, amenities out of his reach range for a person in a wheelchair, toilet flush controls located on the narrow side of the stall, improper grab bar type and placement and high mirrors; and

   g. Plaintiff had difficulty navigating throughout the stadium due to routes and ramps with steep slopes and lack of proper handrails. Additionally, Plaintiff had difficulty locating the elevators and wheelchair routes throughout the stadium due to lack of proper signage.

40. Defendants, sophisticated and well-funded public entities with vast knowledge regarding property compliance issues, either knew or should have known of the lack of compliance with the ADA and Rehabilitation Act. Additionally, despite major renovations undertaken at the stadium in 1996 and 2006, many barriers to disabled access remain which prevent wheelchair users from fully utilizing The Property.

41. 28 C.F.R. § 35.130(4) states that "[a] public entity may not, in determining the site or location of a facility, make selections–(I) [t]hat have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination..." Defendants have violated this provision by providing its services, programs, and/or activities at an inaccessible facility.

42. 28 C.F.R. § 35.150 (b)(1) and 28 C.F.R. § 35.15 (c) mandate that compliance with 28 C.F.R. Part 36 App. A or Uniform Federal Accessibility Standards (UFAS) shall be deemed to comply with Tile II of the ADA. Appendix A to Part 36 - Standards for Accessible Design (28 C.F.R. Part 36, App. A) - sets out guidelines for accessibility for buildings and facilities. These guidelines are to be applied during design, construction and alteration of such buildings and facilities to the extent required by regulations issued by Federal Agencies, including the Department of Justice, under the ADA.

43. Defendants have discriminated against the Plaintiff by excluding him from participation in, and denying them the benefits of, the services, programs, and/or activities at their facility because of Plaintiff's disabilities, all in violation of 42 U.S.C. § 12132. As stated throughout, this pertains to the barriers to Plaintiff's access of the parks and recreational activities at The Property (such as live viewing of baseball games).

44. Furthermore, Defendants continue to discriminate against the Plaintiff, and all

those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, programs, activities, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated or otherwise treated differently than other individuals.

45. The Plaintiff has been denied access to, and has been denied the benefits of services, programs and/or activities of Defendants' facility (The Property), and has otherwise been discriminated against and damaged by Defendants because of the their ADA violations, as set forth above. The Plaintiff will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. Furthermore, as required by the ADA and other remedial civil rights legislation, to properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Plaintiff requires a full inspection of Defendants' facility in order to catalogue and cure all the areas of non-compliance with the Americans with Disabilities Act.

46. Plaintiff has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from Defendants pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

47. Plaintiff is without adequate remedy at law and is suffering irreparable harm.

48. Pursuant to 42 U.S.C. § 12131, *et seq.*, this Court is provided authority to grant Plaintiff's injunctive relief including an order to Defendants to alter Tropicana Field to make those facilities, and/or programs, and/or activities, readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such

time as Defendants cure their violations of the ADA.

**B.  SECOND CAUSE OF ACTION: VIOLATION OF THE REHABILITATION ACT**

49. Plaintiff realleges and reavers the preceding paragraphs as if they were expressly restated herein.

50. Plaintiff brings this claim against Defendants based upon the Rehabilitation Act, 29 U.S.C. §794, *et seq.*

51. The Rehabilitation Act provides that:

> No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

52. As set forth herein, Defendants have violated the Rehabilitation Act by intentionally excluding the Plaintiff, solely by reason of his disabilities, from the participation in, and denying him the benefits of, and has otherwise subjected them to discrimination under, Defendant's programs and activities.

53. Despite being alerted to past ADA violations at the property, Defendants failed to adequately address the inaccessible conditions at the Property, intentionally discriminating against Plaintiff.

54. A non-exclusive list of Defendants' violations of the Rehabilitation Act and

discriminatory conduct against the Plaintiff is evidenced by:

a. denying Plaintiff access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations and/or services offered by Defendants (namely, enjoyment of the recreational facilities like baseball games at The Property);

b. by otherwise limiting Plaintiff in the enjoyment of the rights, privileges, advantages and opportunities enjoyed by individuals without disabilities who receive Defendants' aids, benefits and/or services (e.g., parks and recreation such as baseball games);

c. making facility site or location selections that have the effect of discriminating against individuals with disabilities and excluding them from and denying them the benefits of, and defeating or substantially impairing the accomplishment of the objectives of, the services, programs and/or activities offered by Defendants (e.g., parks and recreation such as baseball games);

d. failing to administer services, programs and/or activities in the most integrated setting appropriate to the needs of Plaintiff;

e. excluding Plaintiff from participation in, and the benefits of, Defendants' services, programs, and/or activities as a result of The Property being inaccessible to or unusable by Plaintiff; and

f. failing to design and/or construct new facilities, or alterations to existing facilities, which are readily accessible to and useable by individuals with disabilities.

55. Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act at Tropicana Field which Plaintiff is likely to encounter upon his future visits to the subject premises. Plaintiff brings this action:

   a. to redress injuries suffered as a result of Defendants' discriminatory actions and inactions set forth herein;

   b. to reasonably avoid further and future injury to Plaintiff as a result of Defendants' ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the ADA and Rehabilitation Act;

   c. to ensure Defendant's facility is accessible as required by the relevant applications of Titles II of the ADA;

   d. to be made whole and ensure future compliance; and

   e. to reasonably avoid future ADA and Rehabilitation Act litigation involving the same property and under the same laws as set forth herein with its concomitant impact on otherwise scarce judicial resources.

56. Only through a complete inspection of the premises and related facilities, undertaken by Plaintiff and/or his representatives, can all said violations be identified and cured so as to ensure access for the disabled, the primary purpose of this action.

57. Upon reasonable belief, Defendants are the recipient of Federal Funds. As noted above, there is a strong nexus between the nature of the federal assistance and the discriminatory practice.

58. As the recipient of federal funds, Defendants are liable for damages to the Plaintiff as a result of their acts and/or omissions constituting intentional discrimination.

59. As set forth above, the Plaintiff has been denied access to, and has been, and without the relief requested herein will continue to be denied the access to the goods, services, programs, facilities, activities and/or accommodations offered by Defendants solely by reason of his disability, and has otherwise been discriminated against and damaged solely by reason of his disability as a result of Defendants' Rehabilitation Act violations set forth above.

60. Plaintiff has been obligated to retain undersigned counsel for the filing and prosecution of this action, and has agreed to pay his counsel reasonable attorneys' fees, including costs and litigation expenses, incurred in this action. Plaintiff is entitled to recover those attorneys' fees, costs and litigation expenses from Defendant pursuant to 29 U.S.C. §794(b).

61. Pursuant to 29 U.S.C. §794(a), this Court is provided authority to grant Plaintiff's injunctive relief including an order to alter the subject premises, facilities, services, activities, programs and/or accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act; closing all premises and facilities and discontinuing all non-complying services, activities, programs and/or accommodations until the requisite modifications are completed; and, granting the Plaintiff compensatory damages for Defendant's discriminatory actions.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment against DEFENDANT and requests the following injunctive and declaratory relief:

A. That the Court declares that The Property owned and/or operated by Defendants is in violation of Title II of the Americans with Disabilities Act;

B. That the Court declares that The Property owned and/or operated by Defendants is in violation of Rehabilitation Act;

C. That this Court enter an Order directing Defendants to alter and modify the Tropicana Field premises, facilities, services, activities, programs, and/or accommodations as appropriate to comply with Title II of the ADA and the Rehabilitation Act;

D. That this Court enter an Order directing Defendants to evaluate and neutralize their policies and procedures towards persons with disabilities so as to allow it to undertake and complete corrective procedures to make Tropicana Field's programs accessible to the disabled;

E. That this Court award Plaintiff an award of compensatory damages under the Rehabilitation Act in an amount to be determined at trial;

F. That judgment be entered against Defendants imposing interest on damages;

G. That this Court award Plaintiff his reasonable attorneys' fees, costs and litigation expenses incurred in prosecuting this action; and

H. For all other and further relief, including equitable relief, as this Court may deem necessary and appropriate.

Respectfully Submitted,

Louis I. Mussman ("Trial Counsel")
Fla. Bar # 597155
Brian T. Ku
Fla. Bar # 610461
KU & MUSSMAN, P.A.
12550 Biscayne Blvd., Suite 406
Miami, FL 33181
Tel: (305) 891-1322
Fax: (305) 891-4512
louis@kumussman.com
brian@kumussman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on August 1, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Jeannine S. Williams, Esq. at Jeannine.Williams@stpete.org.

_____
Louis I. Mussman, Esq.